**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

REYNOLDS METALS COMPANY AND
CONSOLIDATED SUBSIDIARIES,
Petitioner-Appellant,

v.

No. 96-1755

INTERNAL REVENUE SERVICE,
Respondent-Appellee.

Appeal from the United States Tax Court.
(Tax Ct. No. 93-24939)

Argued: May 5, 1997

Decided: June 3, 1997

Before HALL, LUTTIG, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Frederick H. Robinson, MILLER & CHEVALIER,
CHARTERED, Washington, D.C., for Appellant. Edward T. Perel-
muter, Tax Division, UNITED STATES DEPARTMENT OF JUS-
TICE, Washington, D.C., for Appellee. **ON BRIEF:** James L.
Sanderlin, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P.,
Richmond, Virginia, for Appellant. Loretta C. Argrett, Assistant
Attorney General, Gilbert S. Rothenberg, Tax Division, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants Reynolds Metals Company and its consolidated sub-sidiaries (collectively "Metals"), appeal from the United States Tax Court's holding that they are not entitled to deduct as a capital loss the difference between the fair market value of Metals common stock surrendered by Metals in exchange for certain debentures issued by Metals' wholly-owned subsidiary, and the outstanding principal, or face value, on those debentures received by Metals from the issuer of the debentures. We affirm.

In 1968, Metals formed a wholly-owned subsidiary, Reynolds Met-als European Capital Corporation ("RMECC"), in order to raise $50 million from the European bond market. Metals used RMECC as a vehicle to sell onto the European market $50 million worth of 5-percent Subordinated Guaranteed Convertible Debentures, convertible at any time into Metals common stock at a fixed price at the option of the debenture holder. The indenture under which the debentures were issued provided that, under certain conditions, RMECC could call for the redemption of the debentures and that, should such a redemption be called for, debenture holders could, at their option, either tender the debentures to RMECC for cash, or to Metals for shares of Metals common stock. In the event that the debenture hold-ers chose the latter course, Metals would have the right to "sell" the debentures that it received for its common stock to RMECC not for the market value of the Metals common stock that Metals surrendered for the debentures, but only for the face value of the debentures.

On February 24, 1987, RMECC exercised its right, pursuant to the indenture, to redeem all outstanding debentures at their face value which, by that time, had been reduced from $50,000,000 to $29,733,000. Because of market conditions, the debenture holders, who could receive greater value by converting their debentures into

2

shares of Metals common stock than by returning them to RMECC for the face value of the debentures, chose overwhelmingly to tender their debentures to Metals in exchange for stock. [1] Accordingly, $29,150,000 of the $29,733,000 outstanding debentures were tendered to Metals in exchange for 667,214 shares Metals common stock with a fair market value of $41,879,710.[2] After accounting for other expenses incurred in connection with the conversion, Metals paid a total of $42,174,721 for the debentures,[3] leaving it as the holder of debentures with a face value of $29,150,000. Pursuant to the indenture, Metals proceeded to "sell" the debentures that it now possessed to RMECC in exchange for their face value, $29,150,000, plus accrued interest.

In its 1987 tax return, Metals attempted to claim $13,024,721, which represented the difference between the $42,174,721 that Metals had paid out for the debentures and the $29,150,000 that it ultimately received from RMECC, as a "capital loss deduction" under section 165(f) of the Internal Revenue Code.[4] Metals argued that because it "paid" $42,174,721 for the debentures, it therefore had a basis in the debentures for that amount; and, because it then "sold" those debentures for $29,150,000, it was entitled to a capital loss deduction for the amount by which its basis in the debentures ($42,174,721) exceeded the amount received from the sale of the debentures ($29,150,000). The Commissioner of Internal Revenue rejected this claim and disallowed the deduction.

_____

[1] A debenture holder either could have returned each debenture to RMECC for its face value of $1,000, plus accrued interest of $15.97, for a total of $1,015.97; or, alternatively, delivered each debenture to Metals in exchange for 22.89 shares of Metals common stock which, at the time, ranged in value from $1,207.45 to $1,487.85.

[2] Another $25,000 in debentures were redeemed for cash, and the remaining $598,000 in debentures went unaccounted for.

[3] The $42,174,721 consists of the fair market value of the common stock surrendered by Metals in exchange for the debentures ($41,879,710), plus general expenses incurred by Metals in connection with the exchange ($288,768), plus amounts paid in lieu of issuing fractional shares ($6,242).

[4] Section 165(f) of the Internal Revenue Code provides that "[l]osses from sales or exchanges of capital assets shall be allowed only to the extent allowed in sections 1211 and 1212."

The Tax Court, siding with the Commissioner, concluded that the difference between the fair market value of the stock surrendered by Metals and the face value of the debentures it received from RMECC for the debentures was not a "capital loss" incurred by Metals, but, rather, a "capital contribution" from Metals to RMECC. The court reasoned that this difference was part and parcel of the conversion obligation that Metals voluntarily undertook in the indenture under which RMECC, Metals' wholly-owned subsidiary, issued the debentures in the first place. Accordingly, the court held that Metals was not entitled to claim the difference as a capital loss deduction; Metals could, however, obtain the tax benefits of this capital expenditure by using it to increase its basis in its shares of RMECC.[5]

We have reviewed the Tax Court's opinion, and, particularly, its conclusion that the $13,024,721 paid out by Metals constituted a capital contribution made by Metals to RMECC, its wholly-owned subsidiary. We have also reviewed both parties' briefs and the record and heard oral argument in this case. Finding no error in the decision of the Tax Court, see J.A. at 17-48, we affirm the opinion of that court.

AFFIRMED

_____

[5] The Tax Court reached this issue only after rejecting the Commissioner's argument that no capital loss was incurred by Metals because the debentures did not survive as obligations of RMECC to Metals. The Commissioner does not now challenge this determination, and, for the purposes of this appeal, we accept the court's conclusion on this issue.

4